IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

_____
                                              )
WYETH, a Delaware corporation,                )
                                              )
            Plaintiff,                        )
                                              )
    vs.                                       )        C.A. No. 06-663-SLR
                                              )
CORDIS CORPORATION, a Florida                 )        **REDACTED**
corporation,                                  )        **PUBLIC VERSION**
                                              )
            Defendant.                        )
_____)

**PLAINTIFF WYETH'S ANSWERING BRIEF IN OPPOSITION
TO DEFENDANT CORDIS CORPORATION'S "MOTION TO DISMISS PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) OR, IN THE ALTERNATIVE,
TO DISMISS OR STAY THIS ACTION PENDING RESOLUTION OF THE
CO-PENDING ACTION IN THE DELAWARE COURT OF CHANCERY"**

Of Counsel:

William F. Lee
WILMER CUTLER PICKERING
        HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

Thomas F. Connell
William G. McElwain
Amy Kreiger Wigmore
Tracey C. Allen
WILMER CUTLER PICKERING
        HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000

Original Filing Date: February 12, 2007
Redacted Filing Date: February 20, 2007

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Richard J. Bauer (#4828)
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19801
(302) 658-9200
*Attorneys for Plaintiff Wyeth*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... iii

NATURE AND STAGE OF PROCEEDINGS AND SUMMARY OF
    ARGUMENT ..................................................................................... 1

I.    BACKGROUND FACTS ..................................................................... 3

    A.    Facts Concerning the Parties' License Agreement and the
        Present Dispute ..................................................................... 3

        1.    The License Agreement ................................................. 3

        2.    The Dispute Between the Parties .................................. 3

    B.    Facts Concerning Cordis's Principal Place of Business .......................... 4

        1.    Cordis's Public Statements About Its Principal Place of
            Business ..................................................................... 4

        2.    Facts About Cordis's Day-to-Day Operations .......................... 6

            a.    The Location of Cordis's Divisions ............................. 7

            b.    The Location of Cordis's Employees and
                Management ..................................................... 9

            c.    Other Evidence About the Location of Cordis's
                Economic Activities ........................................... 10

II.    ARGUMENT ..................................................................................... 11

    A.    Cordis's Motion to Dismiss Should Be Denied Because Cordis's
        Principal Place of Business Is In Florida .......................... 11

        1.    The Test for Determining Principal Place of Business
            Focuses on the Location of the Company's Day-to-Day
            Business Activities .................................................. 11

        2.    Under the *Kelly* Test, All of the Evidence Confirms that
            Florida Is Cordis's Principal Place of Business ...................... 13

        3.    Cordis's Prior Representations Are Entitled to Weight
            and Confirm that Cordis's Principal Place of Business Is
            in Florida .................................................................. 15

        4.    Cordis's Arguments In Favor of New Jersey Are Wholly
            Without Merit ........................................................... 17

i

a.  Cordis's Reliance on the Anderson Declaration
    Is Misplaced ............................................................................. 17

b.  Cordis's Reliance on the Sixth Circuit's
    Decision in *Stratienko* Is Misleading ........................................ 22

c.  Cordis's Arguments Based on the License
    Agreement Are Meritless ........................................................... 23

B.  Cordis's Request That This Lawsuit Be Dismissed Or Stayed In
    Favor Of The Chancery Court Action Is Without Merit ..................................... 25

CONCLUSION ............................................................................................................. 28

## TABLE OF AUTHORITIES

### CASES

Page(s)

*AC&S, Inc. v. Aetna Casualty & Surety Co.*, 666 F.2d 819 (3d Cir. 1981) ................................. 26

*American Guaranty. & Liability Insurance Co. v. Anco Insulations, Inc.*, 408 F.3d 248 (5th Cir. 2005) ............................................................................. 26

*American Home Assurance Co. v. Church of Bible Understanding*, No. Civ. A. 03-6052, 2004 WL 1964906 (E.D. Pa. Aug. 16, 2004) ................................... 27

*Black Sea Investors Ltd. v. United Heritage Corp.*, 204 F.3d 647 (5th Cir. 2000) ..................... 26

*Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942) ..................................... 26, 27

*Cedar Rapids Cellular Telephone, L.P. v. Miller*, 280 F.3d 874 (8th Cir. 2002) ......................... 26

*Century Indemnity Co. v. Pyrites Co.*, No. Civ. A. 03-204-SLR, 2003 WL 22283500 (D. Del. Oct. 2, 2003) ..................................................................... 27

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) ................................................................................................ 27, 28

*Danjaq, S.A. v. Pathe Communications Corp.*, 979 F.2d 772 (9th Cir. 1992) ............................ 20

*Dunson v. McNeil-PPC, Inc.*, 346 F. Supp. 2d 735 (E.D. Pa. 2004) .......................................... 21

*Grand Union Supermarkets of Virgin Islands, Inc. v. H.E. Lockhart Management, Inc.*, 316 F.3d 408 (3d Cir. 2003) ...................................................... 11, 13, 21

*Holly Farms Corp. v. Taylor*, 722 F. Supp. 1152 (D. Del. 1989) .......................................... 19, 20

*Horwat v. Paulsen-Webber Cordage Corp.*, 336 F. Supp. 1020 (W.D. Pa. 1971) ....................... 20

*Hutchinson Group, Ltd. v. American International Specialty Lines Insurance Co.*, 2006 U.S. Dist. LEXIS 36349 (W.D. Pa. June 5, 2006) ................................... 26

*Kelly v. U.S. Steel Corp.*, 284 F.2d 850 (3d Cir. 1960) ......................................................... *passim*

*Lugo-Vina v. Pueblo International, Inc.*, 574 F.2d 41 (1st Cir. 1978) ......................................... 20

*McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.*, 263 A.2d 281 (Del. 1970) ............................................................................................... 25

*Mennen Co. v. Atlantic Mutual Insurance Co.*, 147 F.3d 287 (3d Cir. 1998) ............. 12, 15, 16, 21

*Pyramid Securities Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114 (D.C. Cir. 1991), *cert. denied*, 502 U.S. 822 (1991) .............................................................................. 20

*Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp.*, 461 F.2d 1140
(3d Cir. 1972) ......................................................................................7, 12, 13, 19

*Remington Arms Co. v. Liberty Mutual Insurance Co.*, 748 F. Supp. 1057 (D.
Del. 1990).................................................................................................................. 27

*Ryan v. Johnson*, 115 F.3d 193 (3d Cir. 1997) ............................................................ 27, 28

*Shahmoon Industries, Inc. v. Imperato*, 338 F.2d 449 (3d Cir. 1964) ........................... 24

*Shamrock Holdings of California, Inc. v. Arenson*, No. Civ. 04-1339-SLR, 2005
WL 400198 (D. Del. Jan. 25, 2005) .................................................................... 21

*Snodgrass v. Provident Life & Accident Insurance Co.*, 147 F.3d 1163 (9th Cir.
1998).......................................................................................................................... 26

*St. Clair Intellectual Property Consultants, Inc. v. Mirage Systems, Inc.*, 419 F.
Supp. 2d 620 (D. Del. 2006).................................................................................. 26

*Stratienko v. Cordis*, 429 F.3d 592 (6th Cir. 2005) ................................................... 22, 23

*Terra Nova Insurance Co. v. 900 Bar, Inc.*, 887 F.2d 1213 (3d Cir. 1989) ................. 27

## STATUTES AND RULES

28 U.S.C. § 1332 .........................................................................................1, 11, 24, 27

Fed. R. Civ. P. 11(b)(3) ................................................................................................ 6

## OTHER AUTHORITIES

17a James Wm. Moore et al., *Moore's Federal Practice* (3d ed. 2006)
§ 0.77[1.-3] 717.10 ................................................................................................ 19
§ 122.06[6] ............................................................................................................. 26

## NATURE AND STAGE OF PROCEEDINGS AND SUMMARY OF ARGUMENT

This is a breach of contract action, based on a written License and Supply Agreement entered into by Wyeth and Cordis Corporation ("Cordis") in May 1999 and amended in December 2001 and June 2005 (collectively, the "License Agreement" or the "Agreement"). The parties expressly agreed that all disputes relating to the License Agreement could be resolved in this Court. This Court has jurisdiction over this action based on the diversity statute, 28 U.S.C. § 1332.

Wyeth is a Delaware corporation with its principal place of business in New Jersey. D.I. 1 ¶ 1. Cordis is a Florida corporation. *Id.* ¶ 2. On the day this action was filed (October 26, 2006), the indisputable evidence indicated that Cordis's principal place of business was in Florida, and hence, that diversity jurisdiction existed. Cordis's website stated (and still states) that its "Corporate Headquarters" is in Miami, Florida; its Restated Articles of Incorporation state that the company's "principal office" is in Florida; and Cordis has consistently represented, in dozens of court filings throughout the country (including one on October 16, 2006, ***ten days before this action was filed***), that its principal place of business is in Florida. Until this action, Cordis had never represented otherwise and had specifically ***denied*** in at least two court filings that its principal place of business was in New Jersey. Even Cordis's parent company, Johnson & Johnson ("J&J"), states on its website that Cordis Corporation is located in Florida.

Cordis's Motion to Dismiss is premised on a claim that its principal place of business is now in New Jersey, not Florida. Limited jurisdictional discovery produced overwhelming evidence that Cordis's principal place of business was (at the time this action was filed), and remains, in Florida.



—Cordis conducts the overwhelming

majority of its day-to-day activities in Florida, not New Jersey.

Cordis's newfound claim of New Jersey citizenship is a transparent fiction concocted to

escape the jurisdiction of this Court. It is also part of a larger effort at forum shopping. One day

after the Complaint in this action was filed, Cordis filed a complaint in the Delaware Chancery

Court that mirrored in every material respect Wyeth's Complaint in this action. Cordis's

Chancery complaint sought no affirmative relief, but instead, simply recited the same matters at

issue in this action and asked the Chancery Court to declare that Cordis was *not* in breach of

contract. When Wyeth objected to the Chancery Court action as duplicative of this first-filed

federal court action, Cordis filed an Amended Complaint in Chancery Court (on November 16,

2006), seeking to embellish its second-filed action by adding one affirmative claim for breach of

contract.[1]

Cordis's actions, in this Court and in Chancery Court, are an effort to deny Wyeth its

choice of forum, to avoid Cordis's contractual commitment to litigate in this Court, and to escape

the jurisdiction of this Court, which has heard numerous other actions involving the Cordis stent.

This Court plainly has diversity jurisdiction in this case. Cordis's further suggestion that this

Court should exercise its discretionary authority to abstain from deciding this case is without

---

[1]    The Chancery Court action initiated by Cordis on October 27, 2006, is captioned *Cordis v. Wyeth & Wyeth Pharmaceuticals Division*, C.A. No. 2504-N. Cordis's complaint in that action will be referred to as its "Chancery Complaint," and its amended complaint will be referred to as the "Amended Chancery Complaint." The Chancery Complaint and Amended Chancery Complaint are attached to Cordis's Motion to Dismiss (D.I. 9) as Exhibits 3 and 10, respectively.

merit.  Accordingly, Cordis's motion should be denied.

## I.  BACKGROUND FACTS

### A.    Facts Concerning the Parties' License Agreement and the Present Dispute

#### 1.    The License Agreement

In May 1999, Wyeth and Cordis entered into a License Agreement relating to the

development of medical devices for the treatment of coronary disorders.  D.I. 1 ¶ 7. █████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████The

Agreement is governed by the laws of the State of New Jersey.  *See id.* Ex. A § 13.7.  It provides

that disputes under the Agreement can be heard "in the state or federal courts of the state of

Delaware."  *Id.*  That choice of forum provision was adopted by the parties in 1999 and remained

unchanged despite amendments to the Agreement in 2001 and 2005 (*see id.* Exs. B and C,

respectively).

#### 2.    The Dispute Between the Parties

A dispute arose between Wyeth and Cordis concerning Cordis's obligations under the

License Agreement.  Wyeth contends that Cordis █████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

██████████████████████  When those efforts failed, Wyeth filed this suit on October 26,

2006, as expressly permitted by the License Agreement.

Wyeth's Complaint alleges that Cordis has breached numerous obligations under the

License Agreement. Wyeth seeks, *inter alia*, damages, injunctive relief, and a declaration of its

right to terminate the license agreement based on Cordis's material breaches.

On October 27, 2006—***the day after*** Wyeth filed this Action—Cordis filed its Chancery

Complaint. That complaint involves the same parties, the same License Agreement, the same common nucleus of operative facts, and the same alleged breaches as this action. In it, Cordis seeks a declaration that it has not breached the License Agreement and, hence, that the Agreement should continue in force. In every material respect, the Chancery Complaint mirrors Wyeth's Complaint filed in this Court one day earlier. Cordis amended its Chancery Complaint on November 16, 2006. The Amended Chancery Complaint repeats the allegations from the earlier Chancery Complaint, but adds one more claim, also arising out of the License Agreement.

On November 27, 2006, Wyeth moved to dismiss or stay the Chancery Action based on Delaware's longstanding rule deferring to the "first-filed" action. Wyeth's Motion is fully briefed and awaiting decision.[2]

**B.      Facts Concerning Cordis's Principal Place of Business**

After the Motion to Dismiss was filed, Wyeth obtained limited document discovery and Rule 30(b)(6) depositions from Cordis on jurisdictional facts. All of the relevant facts, either previously known or obtained in discovery, demonstrate that Cordis's principal place of business is in Florida, not New Jersey.

**1.      Cordis's Public Statements About Its Principal Place of Business**

Until this action, Cordis had consistently held itself out as a Florida corporation, with its principal place of business in Florida. Cordis's Restated Articles of Incorporation, filed with the Florida Secretary of State in 1978, so state; and they have never been amended in this respect.

---

[2]      The "fact" section of Cordis's brief repeatedly refers to a patent infringement action, *Alza Corp. v. Wyeth*, No. 9:06-cv-0156 (E.D. Tex., filed July 26, 2006), currently pending in the Eastern District of Texas. According to Cordis, the instant action is a "pretextual lawsuit" brought as "a tactical ploy to gain leverage" in the Alza dispute. D.I. 9 at 1. That allegation is baseless and irrelevant. The Alza litigation is a patent infringement action involving anti-depressant drugs and a company (Alza) not present in this action. The suit has no connection with Cordis, with Cordis's citizenship, with the License Agreement, or with CYPHER stents.

*See* Ex. 32 at CWY000387 (stating Cordis's "principal office" is in Florida).[3] Likewise, Cordis's

website, in which it describes itself to the public, states that Cordis's "Corporate Headquarters" is

in Miami Lakes, Florida.[4]

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

Just ***ten days*** before this action was filed, on October 16, 2006, Cordis told the United

States District Court for the Southern District of Florida that Cordis "is a Florida Corporation

***with its principal place of business in Miami Lakes, Florida.***" Ex. 1, ¶ 4 (emphasis added).

That representation is consistent with numerous other representations that Cordis has made to

federal courts since 2002, including at least two occasions on which Cordis expressly denied that

its principal place of business was in New Jersey.   They include:

- **August 17, 2006**: Cordis "admits" that it "has a principal place of business at 14201 N.W. 60th Avenue, Miami Lakes, Florida 33014." Ex. 2, ¶ 2; Ex. 3, ¶ 2.

- **December 21, 2005**: Cordis "admits" that it "has a principal place of business at 14201 N.W. 60th Avenue, Miami Lakes, Florida 33014." Ex. 4, ¶ 2; Ex. 5, ¶ 2.

- **August 29, 2005**: "Cordis admits that it is a Florida corporation with its principal place of business in Florida." Ex. 6, ¶ 2.

- **March 28, 2005**:  Cordis asserts: "Defendant Cordis Corporation is incorporated and has its principal place of business in Florida." Ex. 7, ¶ 4.

- **December 3, 2004**:  Cordis states: "At the time the Complaint was filed, at the time of removal, and during all intervening times, Cordis was (and is) a corporation organized under the laws of the State of Florida, with its principal place of business in the State of

---

[3]     All Exhibits cited herein are contained in the Appendix of Exhibits (Volumes I-V), filed contemporaneously herewith.

[4]     *See* Exs. 1-5 to the Declarations of Tracey C. Allen and Charles Beene, filed contemporaneously herewith.

Florida." Ex. 8, ¶ 9; *see also* Ex. 9, ¶ 3.

- **April 30, 2003**: "Cordis denies that its principal place of business is in Warren, New Jersey. Cordis' principal place of business is in Miami Lakes, Florida." Ex. 11, ¶ 2.

- **January 21, 2002**: "Cordis denies that its principal place of business is in Warren, New Jersey. Cordis' principal place of business is in Miami Lakes, Florida." Ex. 15, ¶ 2.

These are only a sampling of Cordis's representations that its principal place of business is in Florida. Cordis made similar representations in other courts;[5] and discovery has not revealed a single instance, prior to this action, in which Cordis ever told a court or regulatory agency that its principal place of business was anywhere other than in Florida.[6] Cordis's representations to courts are particularly significant. Mr. Rick Anderson, the declarant on whose testimony Cordis principally relies, testified that ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████ Those lawyers were required by Fed. R. Civ. P. 11(b)(3) to have "evidentiary support" for their assertions, and those representations have never been revised. Moreover, Mr. Anderson testified that ████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

### 2. Facts About Cordis's Day-to-Day Operations

Discovery disclosed numerous additional facts about Cordis's day-to-day operations, which demonstrate that Cordis's principal place of business is in Florida.

---

[5] *See also* Ex. 10, ¶ 5; Ex. 12, ¶ 2; Ex. 13, ¶ 2; Ex. 14, ¶ 2; Ex. 16, ¶ 3; Ex. 17, ¶ 6; Ex. 18, ¶ 2.

████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

*a.*    ***The Location of Cordis's Divisions***



---

[7]    *See* Ex. 46, Letter of February 7, 2007 from Patrick S. Almonrode, counsel for Cordis, to Thomas F. Connell, counsel for Wyeth.

[8]    *See, e.g., Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972).





10/    Cordis has stipulated that data and information contained in Exhibits 33, 36, 39 and 40 are representative of Cordis on October 26, 2006, the date on which this action was filed. *See* D.I. 23.



   **b.**  ***The Location of Cordis's Employees and Management***

   The location of a company's employees provides significant evidence about where its

day-to-day operations are conducted.





          *c.*       ***Other Evidence About the Location of Cordis's Economic Activities***

       There are numerous other indications that the principal geographic location of Cordis's operations is in Florida. They include the following:

- **<u>Manufacturing</u>:** ████████████████████████
████████████████████████████████████████

- **<u>Inventories</u>:** ██████████████████████████
██████████████████████████████████████████

- **<u>Assets</u>:** ████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████

███████████████████████████████████████████

- **Taxes:** ██████████████████████████████

███████████████████████████████████████████

- **Bank Account:** ████████████████████████

████████

- **Financial Records:** ████████████████████

███████████████████████████████████████████

## II. <u>ARGUMENT</u>

### A.     <u>Cordis's Motion to Dismiss Should Be Denied Because Cordis's Principal Place of Business Is In Florida.</u>

As Cordis correctly notes, for purposes of the diversity statute, "the question of Cordis's citizenship is determined as of October 26, 2006," when Wyeth filed its Complaint.  D.I. 9 at 11-12, *citing Grand Union Supermarkets of Virgin Islands, Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003).  Here, all relevant information indicates that Cordis's principal place of business in October 2006 was in Florida.  Thus, Cordis's motion should be denied.

### 1.     The Test for Determining Principal Place of Business Focuses on the Location of the Company's Day-to-Day Business Activities.

The Third Circuit applies the "center of corporate activities" test for determining the principal place of business of a corporation under 28 U.S.C. § 1332(c)(1).  *Kelly v. United States*

---

[12]/     Where percentages are not provided in the tax return itself, percentages are calculated for assets as of year end.  Cordis has stipulated that the Florida and New Jersey tax returns produced to Wyeth during discovery are true and correct copies.  *See* Ex. 47.

*Steel Corp.*, 284 F.2d 850, 854 (3d Cir. 1960).  Under this test, the most significant factor considered is the location of the "headquarters of the day-to-day corporate activities and management decisions."  *Id.*; *Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972).  A host of secondary factors is also considered, including the location of the corporation's employees, productive capacity, sales and revenues, physical property, other assets, and bank accounts.  *See Kelly*, 284 F.2d at 854; *see also Quaker State*, 461 F.2d at 1144; *Mennen Co. v. Atl. Mut. Ins. Co.*, 147 F.3d 287, 291 (3d Cir. 1998).

In *Kelly*, the Third Circuit was asked to determine the citizenship of United States Steel, which was then a "giant" company with fourteen divisions, eleven subsidiaries, and manufacturing activities spread across the country and the world.  *Kelly*, 284 F.2d at 854.  The plaintiffs argued that the company's principal place of business was New York, its "nerve center," where its Board of Directors met, its financial affairs were conducted, its federal taxes were paid, and final decisions were made on all company-wide strategic matters.  *Id.* at 853-854.  The Third Circuit, however, rejected that approach.  Instead, it took a more "pragmatic" and "functional" approach.  *Mennen*, 147 F.3d at 291-92.  "Rather than looking to the location of the highest level of policymaking as dispositive, [the *Kelly* court] looked to the location of production and 'the headquarters of day-to-day corporate activity and management.'"  *Id.* (quoting *Kelly*, 284 F.2d at 854).  The *Kelly* court concluded that U.S. Steel's principal place of business was in Pennsylvania, because that was where the largest number of its employees and productive capacity in the U.S. were located and where day-to-day decision making with respect to the ongoing activities of the company (*e.g.*, producing steel) occurred.  284 F.2d at 854.

As the Third Circuit recently explained:

[In *Kelly*], we found that even though U.S. Steel filed income taxes and made corporate policy decisions in New York, it conducted its business relating to manufacturing, mining, transportation and general operation in Pennsylvania, and employed more workers and owned more property there than in any other state. We therefore concluded that Pennsylvania, not New York, was its principal place of business.

12

*Grand Union Supermarkets*, 316 F.3d at 411.

In describing the *Kelly* test, Cordis cites but incorrectly describes *Quaker State*, a case fully consistent with *Kelly* as discussed above. D.I. 9 at 9-10. In *Quaker State*, the court described the essential part of the *Kelly* test as focusing not on the location of the executives, but on where the company's "place of operations" was located and where its "essential day to day activities" were conducted. 461 F.2d at 1144. Noting that "[t]he place of the Board of Directors and the residence of Board members . . . have little impact under *Kelly* . . . ," the court considered the location of the "daily activities" of the company, *id.*, as well as the location of the greatest number of employees, "the dollar value of tangible personal property" owned by the company, and the "amount of income derived" in each state. *Id.*

The court weighed each of these factors and concluded that Pennsylvania was Quaker State's principal place of business, because it was "the center of [the company's] daily activities," had nearly half of the company's employees and nearly eight times as many as any other state, and had the greatest share of tangible personal property and the greatest share of income (about 15 percent of the company's total). *Id.* Thus, far from being a one-dimensional test that looks only at the home office of the company's executives, the *Kelly* test looks at a number of relevant factors. When that test is properly applied here, Cordis's motion must fail.

> **2.    Under the *Kelly* Test, All of the Evidence Confirms that Florida Is Cordis's Principal Place of Business.**

The jurisdictional discovery tracked the *Kelly* factors and conclusively demonstrates that Cordis's principal place of business is in Florida. On the central question of where Cordis's day-to-day corporate activities occur, the answer is clear: Florida. ■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

13



In addition, all of the "secondary factors" discussed in *Kelly* also point to Florida.

███████████████████████████████

In short, this case is controlled by *Kelly*, which dictates a finding of Florida citizenship.

      **3.**    **Cordis's Prior Representations Are Entitled to Weight and Confirm that Cordis's Principal Place of Business Is in Florida.**

The empirical facts about Cordis's operations are corroborated by Cordis's consistent representations, to courts and the public, that its principal place of business is in Florida.

Cordis, well aware of its own operations, should be in the best position to know where it is principally located. Before this litigation began, Cordis had consistently told the world, year after year, that it was a Florida corporation with its principal place of business in Florida. Cordis said as much in its Restated Articles of Incorporation, adopted in 1978 and still in place today. *See* Ex. 32. Cordis says so on its website, which identifies its "Corporate Headquarters" as in Florida and lists only a Florida address.[14]

███████████████████████████████

Cordis said this implicitly in the License Agreement in this action, when it agreed to a federal forum that would otherwise not have been available if Cordis had New Jersey citizenship, as it now claims. D.I. 1, Ex. A § 13.7. And Cordis said this consistently to courts around the country, including to one court ten days before this action was filed. Indeed, even the J&J website lists Cordis Corporation's "location" as Miami Lakes, Florida, and separately lists Cardiology in Miami Lakes, Florida and Endovascular in Warren, New Jersey.[15]

Cordis now seeks to reverse course. Citing *Mennen*, it has argued in the second-filed

---

[14]     *See* Exs. 1-5 to the Declarations of Tracey C. Allen and Charles Beene, filed contemporaneously herewith.

[15]     *See* Ex. 6 (J&J website screenshot) to Declaration of Tracey C. Allen, filed contemporaneously herewith.

Delaware Chancery action that it should not be bound by its prior representations to courts around the country and that such representations are "irrelevant to the Federal Court's analysis of whether it has subject matter jurisdiction."[16/]  *Mennen* holds no such thing; and it certainly is not a license to litigating parties to misrepresent their citizenship.

*Mennen* involved a situation in which all of the "empirical facts," 147 F.3d at 293, concerning the defendant insurer's principal place of business—including the location of most of its operations and employees, the place where it conducted most of its business operations, the place where it filed its tax returns, etc.—pointed to New Jersey, *id.* at 289.  Nevertheless, the *Mennen* plaintiff sought to overcome that evidence by citing two prior instances in which the defendant had stated that its principal place of business was Indiana, not New Jersey.  Unlike here, however, in both of those instances the defendant had corrected its prior representations, telling the courts that the statements were inaccurate and that the defendant's true place of business was in New Jersey, not Indiana.  *Id.* at 293 n.8.  The Third Circuit in *Mennen* held only that a party's prior representations about its principal place of business—that were inaccurate when made and subsequently corrected—have no estoppel effect if they "run contrary to the empirical facts with which the jurisdictional inquiry is concerned."  *Id.* at 293.

*Mennen* is a far cry from the situation here.  Unlike in *Mennen*, Cordis's prior representations about its principal place of business have been unwavering and consistent with all of the other empirical facts known about Cordis.  Mr. Anderson testified ███████████

████████████████████████████████████████████████████████████████

███  As already noted, the brief jurisdictional discovery conducted in this case disclosed a mountain of evidence about Cordis's operations that strongly supports Cordis's own prior conclusion that its principal place of business is in Florida.  Moreover, as Mr. Anderson testified,

---

[16/]    *See* Ex. 19, Answering Brief in Opposition to Wyeth's Motion to Stay or Dismiss or, In the Alternative, To Stay This Action, at 16 (Chancery Court, Jan. 11, 2007).



**4.    Cordis's Arguments In Favor of New Jersey Are Wholly Without Merit.**

Cordis asserts three arguments in favor of New Jersey.  None is persuasive.

**a.    *Cordis's Reliance on the Anderson Declaration Is Misplaced.***

The only evidence offered by Cordis in support of its claim of New Jersey citizenship is

the Declaration of Rick Anderson, who describes himself as 

Mr. Anderson's deposition, taken after Cordis's Motion was filed, demonstrated that his

Declaration has significant misstatements and omissions that bear on the weight, if any, it should

be given. 

Second, when challenged about his statement that Cordis



Third, although the Declaration mentions

Most significantly, although the Declaration discusses



It is now clear that

---

20/    That J&J would involve itself in the affairs of Cordis, and that such involvement would manifest itself in J&J's home state of New Jersey, "is a natural and inevitable result of having bought the company" and does not establish that New Jersey has become Cordis's principal place of business. *See Holly Farms Corp. v. Taylor*, 722 F. Supp. 1152, 1160 (D. Del. 1989). In fact, it is hornbook law that "[a] subsidiary corporation which is incorporated as a separate entity from its parent corporation is considered to have its own principal place of business." *Id.* at 1161 (*quoting* Moore's Federal Practice, ¶ 0.77[1.-3] 717.10); *see also Quaker State*, 461 F.2d at 1142 ("where the corporate separation between a parent and subsidiary, 'though perhaps merely formal,' is 'real' and carefully maintained, the separate place of business of the subsidiary is recognized in determining jurisdiction, even though the parent corporation exerts a high degree of control through ownership or otherwise").

21/    *See* Ex. 6 to Decl. of Tracey C. Allen, filed contemporaneously herewith.



Based on these admitted facts, the Anderson Declaration is legally irrelevant. The

Declaration does not 

It is well-settled that "only the incidents of the defendant

corporation are relevant, *i.e.*, its corporate veil is generally not to be pierced for the purpose of

aggregating its corporate incidents with those of its subsidiary companies."[23] Because the



[23]        *See, e.g., Horwat v. Paulsen-Webber Cordage Corp.*, 336 F. Supp. 1020, 1021 (W.D. Pa.
1971); *see also Danjaq, S.A. v. Pathe Commc'ns Corp.*, 979 F.2d 772, 775-776 (9th Cir. 1992)
(refusing to consider a subsidiary's activities in a case involving a parent's citizenship); *Pyramid
Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114 (D.C. Cir. 1991), *cert. denied,* 502 U.S. 822 (1991)
(same); *Lugo-Vina v. Pueblo Int'l, Inc.*, 574 F.2d 41 (1st Cir. 1978) (finding that the district court
erred when it considered subsidiary's operations for purposes of determining parent's principal
place of business); *Holly Farms Corp. v. Taylor*, 722 F. Supp. 1152, 1161 (D. Del. 1989).

Anderson Declaration fails specifically to address ██████████████████████

███████ it has no evidentiary value.

But even if the Declaration could be accepted at face value, ███████████████

███████████████████████████████████████████████████████████████

████████████████████████ As already discussed, the Third Circuit has stated on numerous

occasions that the location of a company's Board of Directors is not dispositive, or even

particularly significant, in determining its principal place of business. It was not sufficient in

*Kelly* itself, nor in subsequent decisions.[24/]

Cordis's reliance on █████████████████████████████████ It

ignores *Kelly*'s emphasis on the location, not of the corporate policymakers, but of those officers

and employees running the day-to-day operation of the company. *See Kelly*, 284 F.2d at 854.

Adopting Cordis's focus on ██████████████████████████████████

███████████████████████████ would be an acceptance of the "nerve center" test considered and

rejected in *Kelly*. *Kelly*, 284 F.2d at 853; *see also Dunson v. McNeil-PPC, Inc.*, 346 F. Supp. 2d

735, 740-41 (E.D. Pa. 2004) (rejecting the notion that a corporation's principal place of business

was in the state where its "board of directors and senior executives" were located because "[the

nerve center] test is not the controlling test in the Third Circuit.") (internal citations omitted).

Whatever legal significance (if any) ████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

---

[24/]     *See Kelly*, 284 F.2d at 853; *see also Mennen*, 147 F.3d at 291 (explaining that the *Kelly*
court rejected a proposed approach "according to which the locus of the board of directors' final
decision-making authority would be determinative of the defendant corporation's principal place
of business," engaging instead in "a consideration of the facts of the Steel Corporation's life");
*Shamrock Holdings of California, Inc. v. Arenson*, No. Civ. 04-1339 SLR, 2005 WL 400198, at
*4 (D. Del. Jan. 25, 2005) (explaining that under Third Circuit law, "a principal place of business
is determined by business activities, for example, where the corporation 'conducts its affairs' and
not necessarily just 'where . . . final decisions are made on corporate policy.'" (quoting *Grand
Union Supermarkets*, 316 F.3d at 411)).

21

██████ If anything, U.S. Steel's unsuccessful claim of New York citizenship in *Kelly* was stronger than Cordis's claim of New Jersey citizenship here. In *Kelly,* U.S. Steel relied on the location of its Board of Directors, whose legal responsibility was to be accountable for that company and whose members lived and met in New York. *Kelly*, 284 F.2d at 853. The U.S. Steel Board in turn had officers and executive committees, also located in New York. *Id.* Moreover, a number of "secondary factors" cited by the court favored New York: New York was where the company conducted its financial affairs, borrowed on the capital markets, paid its taxes, owned real property, and made final decisions on company-wide strategic matters. *Id.* at 853-854.

Despite these facts, the *Kelly* court held that U.S. Steel's principal place of business was in Pennsylvania. The court noted that the Board of Directors had delegated day-to-day supervisory responsibility to an "Operation Policy Committee," located in Pennsylvania. *Id.* at 854. In addition, the court noted that Pennsylvania was the location of 34 percent of the company's supervisory employees; 32 percent of all employees; more than 33 percent of its tangible property; and 35 percent of its productive (*i.e.*, manufacturing) capacity. *Id.*

Here, those same factors point even more strongly toward Florida. ████████



**b.    *Cordis's Reliance on the Sixth Circuit's Decision in* Stratienko *Is Misleading.***

Cordis cites out of context one sentence from an appellate court opinion, suggesting that the United States Court of Appeals for the Sixth Circuit concluded that Cordis had recently moved its principal place of business from Florida to New Jersey. *See* D.I. 9 at 11 (citing *Stratienko v. Cordis*, 429 F.3d 592, 595 (6th Cir. 2005) ("Cordis is a Florida corporation with its

principal place of business in New Jersey")).  The Sixth Circuit did no such thing.  The court

made no findings about Cordis's citizenship, but simply recited the facts alleged in plaintiff's

complaint before ruling in Cordis's favor on an entirely unrelated point.  Moreover, Cordis failed

to disclose that in the lower court proceedings in *Stratienko*, Cordis twice *denied* that its principal

place of business was in New Jersey, asserting instead that it was in Florida.  *See* Ex. 11, ¶ 2; Ex.

15, ¶ 2.  The Sixth Circuit did not resolve this disputed issue, which had no bearing on its

jurisdiction in any event.[25/]  Moreover, Cordis did not regard the Sixth Circuit's statement as

resolving the issue or determining that Cordis's principal place of business was in New Jersey,

because a year after *Stratienko*, Cordis represented that its principal place of business was in

Florida.  *See* Ex. 1, ¶ 4.

        *c.*     ***Cordis's Arguments Based on the License Agreement Are Meritless.***

Citing three provisions of the License Agreement, Cordis asserts that the parties

"recognized" that Cordis's principal place of business was in New Jersey, not Florida.  D.I. 9 at

11.  These assertions are groundless.

As an initial matter, Cordis's argument ignores the one provision of the License

Agreement that is most directly relevant here—the choice-of-forum provision, in which Cordis

expressly agreed to the jurisdiction of this Court to hear disputes arising under the Agreement.

Moreover, Cordis's argument is a *non sequitur*.  The three provisions Cordis cites were all in

place in 1999, three years before Cordis claims that it began moving from Florida to New Jersey.

D.I. 9, Ex. 4, ¶ 18.  The parties cannot have "recognized" that New Jersey was Cordis's principal

place of business, when Cordis itself concedes that it was still principally located in Florida until

2002.  In any event, the cited provisions are irrelevant.

---

[25/]     The plaintiff in *Stratienko* was a Tennessee resident, so whether Cordis's principal place of business was in New Jersey or Florida was of no consequence, as diversity would have existed under either scenario.  *See Stratienko*, 429 F.3d at 595.  As a result, neither the basis for diversity jurisdiction nor Cordis's principal place of business was ever an issue in the case.

First, there is no dispute that Cordis has had "a place of business" in New Jersey since at least 1999. The License Agreement, however, fails to state that Cordis's *principal* place of business was in New Jersey. That is because, as even Cordis concedes, Cordis's principal place of business in 1999 was in Florida, not New Jersey. *See id*. If anything, the fact that the parties failed to change the License Agreement over the next seven-plus years to state that Cordis's *principal* place of business was in New Jersey or to change the forum provision (notwithstanding the fact that the agreement was twice amended during that time period for other purposes) further confirms that no change of citizenship occurred.

Second, the fact that Cordis has some employees (mentioned in the License Agreement) whose offices are located in New Jersey is of no consequence. By contrast, the fact that ███████ ████████████████████████████████████████████████████████████ is quite significant under *Kelly*. After all, U.S. Steel had many employees in New York and nearly two-thirds of its workforce outside of Pennsylvania, but that did not change the fact that Pennsylvania was its *principal* place of business. *See Kelly*, 284 F.2d at 854.

Third, Cordis has presented no evidence (and there is none) that the Agreement's choice of law provision is a recognition that each party was a "citizen of New Jersey." In fact, the language of Section 13.7 leads to the opposite conclusion. In the very same provision, the parties consented to the jurisdiction of both the federal and state courts of Delaware. Cordis's consent to a Delaware federal court forum to adjudicate contract disputes under the Agreement is a recognition that there was diversity under 28 U.S.C. § 1332. That inference is particularly strong, where, as here, ████████████████████████████████████ yet Cordis raised no issue about its consent to federal court jurisdiction at that time.

Finally, *Shahmoon Industries, Inc. v. Imperato*, 338 F.2d 449, 452 (3d Cir. 1964), cited by Cordis, provides no support for its position. In *Shahmoon*, a New Jersey party claimed diversity, asserting that its principal place of business was New York. That claim was undercut, however, when the court of appeals discovered a contract provision from a different agreement

24

stating that the plaintiff's *principal* place of business was New Jersey. *Id.* at 453. That fact was significant, both because it was flatly inconsistent with the plaintiff's claim that its principal place of business was New York and because, if true, it would destroy diversity. The message of *Shahmoon* is that prior inconsistent statements about a party's principal place of business—such as the more than 20 statements Cordis made on that subject since 2002—are important in assessing the credibility of its current, inconsistent position.

**B.      Cordis's Request That This Lawsuit Be Dismissed Or Stayed In Favor Of The Chancery Court Action Is Without Merit.**

In a final argument, Cordis asserts that even if this Court has jurisdiction, it also has a "mandate" to dismiss or stay this action in favor of the second-filed Chancery Court Action. D.I. 9 at 16. Cordis's request should be denied for three reasons.

First, Cordis expressly *consented* to have this Court resolve any disputes between it and Wyeth under the Agreement. If this Court has jurisdiction, as it plainly does, Cordis should not be heard to argue that the action must be sent elsewhere. By consenting to litigate here, Cordis has expressly acknowledged that this Court is a proper forum in which to resolve disputes arising under the Agreement. Moreover, the License Agreement requires the application of New Jersey law to the dispute; and as Cordis itself has conceded, "[t]he only legal question" concerning these parties' disputes turns on "New Jersey state contract law." D.I. 9 at 16. The Chancery Court is in no better position to decide issues of New Jersey state contract law than this Court. Having agreed in writing to litigate in this Court, Cordis has no legal or equitable grounds on which to ask this Court now to defer to another court, or to abstain.

Second, Cordis's request for abstention entirely ignores the "first-filed" rule applicable to all Delaware state court cases. Cordis's request has things backwards: It is the Chancery action that should be dismissed or stayed in favor of this first-filed action. *See, e.g.*, *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.*, 263 A.2d 281, 283 (Del. 1970); *see also* Ex. 20 (Wyeth's brief in support of its motion in Chancery Court).

Third, Cordis's reliance on *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942),

and its progeny is completely misplaced. For one thing, this is a breach of contract action, not

simply a request for "declaratory relief under the Federal Declaratory Judgment Act," D.I. 9, at

14. Wyeth seeks ***damages*** and ***injunctive relief*** as well as a declaration of its rights under the

License Agreement. D.I. 1 at 10-11, Prayer for Relief, ¶¶ c, d, f, g, and h.

Moreover, *Brillhart* does not stand for the proposition that district courts may refuse to

hear cases that seek any relief under the Declaratory Judgment Act. D.I. 9 at 14-16. Rather,

courts have uniformly held that such discretion is applicable only to claims for purely declaratory

relief.[26] In fact, nearly all the cases cited by Cordis involved plaintiffs seeking purely declaratory

relief.[27] Most were brought by insurers seeking to avoid state court by requesting purely

---

[26]    *See, e.g., Am. Guar. & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 250-51 nn.8 & 9 (5th Cir. 2005) (internal citations omitted) (holding that "[i]f the federal suit seeks only a declaration of rights, the district court's discretion to stay or dismiss the suit is governed by a standard derived from *Brillhart* . . . . If the suit involves a request for monetary or other relief, the district court's discretion to stay is narrowly circumscribed by its obligation to hear cases within its jurisdiction, even if declaratory relief is also requested. . . ."); *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 879 (8th Cir. 2002) (*Brillhart* is not applicable to actions, like the one at bar, that "involve good faith claims for injunctive relief"); *Black Sea Inv. Ltd. v. United Heritage Corp.*, 204 F.3d 647, 651-52 (5th Cir. 2000) (declining to apply *Brillhart* to a federal diversity contract action in which the plaintiff sought both injunctive and declaratory relief); *Snodgrass v. Provident Life and Accident Ins. Co.*, 147 F.3d 1163, 1167 (9th Cir. 1998) (holding that, "when other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission or other claims for monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief"); *see also Hutchinson Group, Ltd. v. Am. Int'l Specialty Lines Ins. Co.*, No. 2:05cv1745, 2006 U.S. Dist. LEXIS 36349, at *10-12 (W.D. Pa. June 5, 2006) (holding that the action was not one for merely declaratory judgment and, thus, *Brillhart* did not govern, where only one of three counts sought declaratory judgment, and the other counts sought damages for breach of contract and fees for bad faith); 17A JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 122.06[6] (3d ed. 2006) (stating that "*Brillhart* analysis applies only when the action does not include a request for coercive relief").

[27]    To the extent that Cordis attempts to argue that "the fact that the complaint is not limited to declaratory relief does not preclude abstention in favor of a state court proceeding[,]" *see* D.I. 9 at 18, n.1, the cases it cites are inapposite. The court in *AC&S, Inc. v. Aetna Cas. & Sur. Co.* addressed only the question of justiciability, not abstention, holding simply that the counts for declaratory relief, as well as the counts for non-declaratory relief, presented the requisite "case or controversy." 666 F.2d 819, 822 (3d Cir. 1981). In *St. Clair Intellectual Property Consultants, Inc. v. Mirage Systems, Inc.*, the court entirely disregarded the tort claims, apparently treating the

declaratory relief in a federal forum. *See, e.g., Brillhart*, 316 U.S. at 419 (insurer brought suit

"for a declaratory judgment to determine its rights under a reinsurance agreement"); *Terra Nova*

*Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213 (insurer sought solely declarations regarding its duty to

defend and its duty to indemnify); *Century Indemnity Co. v. Pyrites Co.*, 2003 WL 22283500 (D.

Del. Oct. 2, 2003) (insurer filed only "a declaratory judgment action . . . seeking declaratory relief

relating to an insurance dispute"); *American Home Assurance Co. v. Church of Bible*

*Understanding*, No. Civ. A. 03-6052, 2004 WL 1964906 (E.D. Pa. Aug. 16, 2004) (insurer

sought only declarations concerning injured insured's status under a worker's compensation

policy).  Those cases have no applicability here, where Wyeth seeks affirmative relief from the

Court.

      As a last resort, Cordis makes a generalized plea to this Court to abstain, arguing that the

Delaware state courts are better qualified to hear "contractual matters such as this one."  D.I. 9 at

18.  Contrary to Cordis's contention, federal district courts do not have discretion to decline to

adjudicate cases properly brought before them simply because a state court could also hear such

actions.  *See* 28 U.S.C. § 1332; *Colorado River Water Conservation Dist. v. United States*, 424

U.S. 800, 813-14 (1976).  "It is axiomatic that federal courts have a 'virtually unflagging

obligation . . . to exercise the jurisdiction given them' by Congress."  *Ryan v. Johnson*, 115 F.3d

193, 195 (3d Cir. 1997) (citing *Colorado River*, 424 U.S. 800 at 817).  This rule applies even

where there is parallel litigation pending in state court.  *Id.*  Thus, because Congress enacted 28

U.S.C. § 1332 to confer federal diversity jurisdiction over certain disputes involving issues of

---

federal action as one in which declaratory relief predominated.  419 F. Supp. 2d 620 (D. Del.
2006).  Finally, in *Remington Arms Co. v. Liberty Mutual Ins. Co.*, the relevant motion to stay
applied only to the declaratory "claims regarding Liberty Mutual's duty to indemnify Remington"
and was referred to as a "motion to stay indemnification claims."  748 F. Supp. 1057, 1059, 1061
(D. Del. 1990).  The non-declaratory claims were not before the court, and thus, the action, as
considered by the court in the motion to stay, *did* involve purely declaratory relief.  Moreover, the
*Remington* court ultimately *denied* the stay, noting that the motion had been filed by the *plaintiff*,
not the defendant, which sought to alter the timeline merely to suit its convenience.  *Id.* at 1062.

state law, "only a congressional intent to require state-court adjudication . . . will be sufficient to

divest it." *Ryan*, 115 F.3d at 199. There is no such congressional intent here. The Supreme

Court has called abstention "an extraordinary and narrow exception" that is justified only in

"exceptional circumstances." *Colorado River*, 424 U.S. at 813 (citing *County of Allegheny v.*

*Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959)). None of those circumstances even remotely

applies here.

## **CONCLUSION**

For the reasons stated, Cordis's Motion to Dismiss or to Stay this action should be

denied.

Respectfully submitted,

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/  Jack B. Blumenfeld*
Jack B. Blumenfeld (#1014)
Of Counsel:                                            Rodger D. Smith II (#3778)
                                                       Richard J. Bauer (#4828)
William F. Lee                                         1201 N. Market Street
WILMER CUTLER PICKERING                                P.O. Box 1347
        HALE AND DORR LLP                              Wilmington, DE  19801
60 State Street                                        (302) 658-9200
Boston, MA  02109                                      *Attorneys for Plaintiff*
(617) 526-6000

Thomas F. Connell
William G. McElwain
Amy Kreiger Wigmore
Tracey C. Allen
WILMER CUTLER PICKERING
        HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000

Original Filing Date: February 12, 2007
Redacted Filing Date: February 20, 2007

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on February 20, 2007 I electronically filed the

foregoing with the Clerk of the Court using CM/ECF, which will send notification of such

filing(s) to the following:

> Richard L. Renck
> Ashby & Geddes
> rrenck@ashby-geddes.com

I also certify that copies were caused to be served on February 20, 2007 upon the

following in the manner indicated:

| **BY HAND** | **BY EMAIL** |
|---|---|
| Lawrence C. Ashby | Gregory L. Diskant |
| Steven J. Balick | *gldiskant@pbwt.com* |
| Richard L. Renck | Michael J. Timmons |
| ASHBY & GEDDES | *mjtimmons@pbwt.com* |
| 222 Delaware Ave. | Irena Royzman |
| P.O. Box 1150 | *iroyzman@pbwt.com* |
| Wilmington, DE  19899 | Patrick S. Almonrode |
| | *palmonrode@pbwt.com* |
| | Rosa E. Son |
| | *reson@pbwt.com* |
| | PATTERSON, BELKNAP, WEBB & TYLER LLP |
| | 1133 Avenue of the Americas |
| | New York, NY  10036 |

*/s/ Richard J. Bauer (#4828)*
Richard J. Bauer (#4828)