IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

_____
                                        )
WYETH, a Delaware corporation,          )
                                        )
            Plaintiff,                  )
                                        )
      vs.                               )        C.A. No. 06-663-SLR
                                        )
CORDIS CORPORATION, a Florida           )        **REDACTED**
corporation,                            )        **PUBLIC VERSION**
                                        )
            Defendant.                  )
_____ )

**APPENDIX (VOLUME IV – DOCUMENTS PRODUCED BY CORDIS) TO
PLAINTIFF WYETH'S ANSWERING BRIEF IN OPPOSITION
TO DEFENDANT CORDIS CORPORATION'S "MOTION TO DISMISS PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) OR, IN THE ALTERNATIVE,
TO DISMISS OR STAY THIS ACTION PENDING RESOLUTION OF THE
CO-PENDING ACTION IN THE DELAWARE COURT OF CHANCERY"**

                                        Jack B. Blumenfeld (#1014)
                                        Rodger D. Smith II (#3778)
Of Counsel:                             Richard J. Bauer (#4828)
                                        Morris, Nichols, Arsht & Tunnell LLP
William F. Lee                          1201 N. Market Street
WILMER CUTLER PICKERING                 P.O. Box 1347
      HALE AND DORR LLP                 Wilmington, DE  19801
60 State Street                         (302) 658-9200
Boston, MA  02109                       *Attorneys for Plaintiff Wyeth*
(617) 526-6000

Thomas F. Connell
William G. McElwain
Amy Kreiger Wigmore
Tracey C. Allen
WILMER CUTLER PICKERING
      HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000

Original Filing Date: February 12, 2007
Redacted Filing Date: February 20, 2007

VOLUME IV TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| 32 | Restated Articles of Incorporation (Wyeth Dep. Ex. 16) CWY000384-408 |
| 33 | ███████████████████████████████ |
| 34 | ████████████████████████████████████████████ |
| 35 | ████████████████████████████████████████████ |
| 36 | ███████████████████████████████ |
| 37 | █████████████████████████████████████ |
| 38 | ███████████████████████████████ |
| 39 | ███████████████████████████████ |
| 40 | ███████████████████████████████████████ |
| 41 | ███████████████████████████████████████ |
| 42 | ██████████████████████████████████ |
| 43 | ███████████████████████████████████████ |

| Exhibit | Description |
|---------|-------------|
| 44 | ███████████████████████████████ |

EXHIBIT 32

EXHIBIT 93

Wyeth 16
2/2/07

RESTATED

ARTICLES OF INCORPORATION

OF

CORDIS CORPORATION

The following Restated Articles of Incorporation have been duly adopted by the Board of Directors of Cordis Corporation. They only restate and integrate the Corporation's Articles of Incorporation as heretofore amended and do not further amend said Articles of Incorporation.  There is no discrepancy between said Articles of Incorporation, as heretofore amended, and the provisions of these Restated Articles of Incorporation.

### ARTICLE I.
### NAME

The name of this corporation is:  CORDIS CORPORATION.

### ARTICLE II.
### NATURE OF BUSINESS

The general nature of the business to be transacted by this corporation is:

(a)  To engage in every aspect and phase of the business of designing, developing, and manufacturing medical equipment and medical supplies.

(b)  To manufacture, purchase, or otherwise acquire and to own, sell, mortgage, pledge, assign, transfer, or otherwise dispose of, and to invest in, trade in, deal in and with, goods, wares, merchandise, real and personal property, and services, of every class, kind, and description; except that it is not to conduct a banking, safe deposit, trust, insurance, surety, ex-

CWY000384

press, railroad, canal, telegraph, telephone or cemetery company, a building and loan association, mutual fire insurance association, cooperative association, fraternal benefit society, state fair or exposition.

(c)  To conduct business in, have one or more offices in, and buy, hold, mortgage, sell convey, lease, or otherwise dispose of real and personal property, including franchises, patents,copyrights, trademarks, and licenses, in the State of Florida and in all other states and countries.

(d)  To contract debts and borrow money, issue and sell or pledge bonds, debentures, notes and other evidences of in- debtedness, and execute such mortgages, transfers of corporate property, or other instruments to secure the payment of corporate indebtedness as required.

(e)  To purchase the corporate assets of any other corporation and engage in the same or other character of business.

(f)  To guarantee, endorse, purchase, hold, sell, transfer, mortgage, pledge or otherwise acquire or dispose of the shares of the capital stock of, or any bonds, securities, or other evidences of indebtedness created by any other corporation of the State of Florida or any other state or government, and while owner of such stock to exercise all the rights, powers and privileges of ownership, including the right to vote such stock.

(g)  To exercise any power or authority which may be done by a private corporation organized and existing under and by virtue of Chapter 608, Florida Statutes 1953, it being the in- tention that this corporation may conduct and transact any business

-2-

HIGHLY CONFIDENTIAL    CWY000385

lawfully authorized and not prohibited by Chapter 608, Florida
Statutes 1953, or by any other statute of the State of Florida.

### ARTICLE III
### CAPITAL STOCK

The maximum number of shares of stock that this corpora-
tion is authorized to have outstanding at any one time is Four
Million (4,000,000) shares of common stock of $1.00 par value,
all of which shall be issued fully paid and non-assessable.  The
consideration that the corporation shall receive for the issuance
of its common stock, or for the sale of treasury stock, shall be
fixed and determined by the Board of Directors, but not for less
than the equivalent of its full par value.

No stockholder shall be entitled to subscribe to, or
have any pre-emptive rights in or to, any new shares of stock of
the corporation, or in or to any distribution of unissued or
treasury shares of the corporation's stock.

The common stock of $1.00 par value authorized by this
Article may be issued by the Corporation in exchange for, or the
conversion of, evidences of indebtedness, obligations, notes, bonds
or debentures either of this corporation or corporations created
by any other state or government.

### ARTICLE IV.
### INITIAL STOCK

The amount of capital with which this corporation
will begin business is not less than Five Hundred ($500.00) Dollars.

### ARTICLE V.
### TERM OF EXISTENCE

This corporation is to exist perpetually.

-3-

HIGHLY CONFIDENTIAL

CWY000386

ARTICLE VI.
ADDRESS

The initial post office address of the principal office
of this corporation in the State of Florida is 23⁰ N.E. 36th
Street, Miami (37) Florida.  The Board of Directors may from time
to time move the principal office to any other address in Florida.

ARTICLE VII
DIRECTORS

This corporation shall have not less than three (3)
Directors, nor more than nine (9) Directors.  The number of
Directors may be increased or diminished from time to time, by By-
laws adopted by the stockholders, but shall never be less than
three (3).

ARTICLE VIII.
AMENDMENT

These articles of incorporation may be amended in the
manner provided by law.  Every amendment shall be approved by the
Board of Directors, proposed by them to the stockholders, and
approved at a stockholders' meeting by a majority of the stock
entitled to vote thereon.

IN WITNESS WHEREOF said corporation has caused these
Restated Articles of Incorporation, after having been adopted by
its Board of Directors in its meeting of January 30, 1978, to be
signed in its name by its President and its corporate seal to be
hereunto affixed and attested by its Secretary, this the 9th day
of February, 1978.

-4-

HIGHLY CONFIDENTIAL

CWY000387

CORDIS CORPORATION
a Florida corporation

By _____
John Sterner
President

Attest:

_____
P. Howard Wills
Secretary

STATE OF FLORIDA      )
                      )    SS.
COUNTY OF DADE        )

      ON THIS DAY personally appeared before me the under-
signed officer duly authorized by the laws of the State of Florida
to take acknowledgments of deeds, John Sterner, President, and
P. Howard Wills, Secretary, of CORDIS CORPORATION, a Florida
corporation, and acknowledged that they executed the above and
foregoing Restated Articles of Incorporation as such officers
for and on behalf of said corporation after having been duly
authorized to do so.

      WITNESS my hand and official seal at Miami, Dade
County, Florida, this the 9th day of February, 1978.

_____
Notary Public, State of Florida
at Large

My Commission expires:



HIGHLY CONFIDENTIAL

CWY000388

ARTICLES OF AMENDMENT

TO

RESTATED ARTICLES OF INCORPORATION

OF

CORDIS CORPORATION

ARTICLE III of the Restated Articles of Incorpora-
tion of Cordis Corporation is amended as annexed hereto.  Said
amendment was adopted by the shareholders of this corporation
on October 23, 1978.

IN WITNESS WHEREOF, the undersigned President and
Secretary of this corporation have executed these Articles of
Amendment on October 23, 1978.

John Sterner
President

P. Howard Wills
Secretary

STATE OF FLORIDA    )
                    )  SS.
COUNTY OF DADE      )

ON THIS DAY personally appeared before me the
undersigned officer duly authorized by the laws of the State
of Florida to take acknowledgements of deeds, John Sterner,
President of Cordis Corporation, a Florida Corporation, and
acknowledged that he executed these Articles of Amendment as
such officer for and on behalf of said Corporation after
having been duly authorized to do so.

WITNESS my hand and official seal at Miami, Dade
County, Florida, this 24th day of October, 1978.

Notary Public, State of
Florida at Large

NOTARY PUBLIC STATE OF FLORIDA AT LARGE
MY COMMISSION EXPIRES JAN 23 1980
BONDED THRU GENERAL INS UNDERWRITERS

HIGHLY CONFIDENTIAL

CWY000389

ARTICLE III
CAPITAL STOCK

The maximum number of shares of stock that this corpora-
tion is authorized to have outstanding is Fifteen Million
(15,000,000) shares of common stock of $1 par value and Two Million
Five-hundred Thousand (2,500,000) shares of preferred stock of $1
par value, all of which shall be issued fully paid and non-assessable.
The consideration that the corporation shall receive for the
issuance of its common stock, or for the sale of treasury stock,
shall be fixed and determined by the Board of Directors, but not
for less than the equivalent of its full par value.

No stockholder shall be entitled to subscribe to, or
have any pre-emptive rights in or to, any new shares of stock of
the corporation, or in or to any distribution of unissued or
treasury shares of the corporation's stock.

The common and preferred stock of $1.00 par value
authorized by this Article may be issued by the corporation in
exchange for, or the conversion of, evidences of indebtedness,
obligations, notes, bonds or debentures either of this corporation
or corporations created by any other state or government.

1.  Shares of preferred stock may be issued from time
to time in one or more series as in this Article III provided.
All shares of preferred stock shall be of equal rank and shall
be identical in all respects, except in respect of the particulars
fixed by the Board of Directors for series of the preferred stock
as permitted by the provisions of this Article III.  Each series
of preferred stock shall be distinctively designated and all
shares of any one series of preferred stock shall be identical
in all respects with all the other shares of such series, except

HIGHLY CONFIDENTIAL

CWY000390

that shares of any one series issued at different times may differ as to the dates, if any, from which dividends thereon shall be cumulative.

2.  Authority is hereby expressly granted to the Board of Directors, by resolution or resolutions, from time to time to create and provide for the issuance of series of the preferred stock and, in connection with the creation of each such series, to fix by the resolution or resolutions providing for the creation and issue of shares of such series the following provisions of the shares of such series, so far as not inconsistent with the provisions of this Article III applicable to all series of preferred stock:

(a)  The designation of such series and the number of shares comprising such series, which number may (except where otherwise provided by the Board of Directors in creating such series) be increased or decreased (but not below the number of shares then outstanding) from time to time by like action of the Board of Directors;

(b)  The dividend rate per annum, if any, at which holders of shares of such series shall be entitled to receive dividends, whether or not dividends on the shares of such series shall be cumulative, the times at which and the quarterly dividend periods for which dividends on such series shall be paid, the date or dates, if any, from which dividends shall be cumulative and the other conditions, if any, on which such dividends shall be paid;

(c)  The time or times, if any, at which the

HIGHLY CONFIDENTIAL

shares of such series shall be subject to redemption, in whole or in part, the price or prices to which holders of shares of such series shall be entitled upon such redemption, and the other terms and conditions, if any, on which shares of such series may be so redeemed;

(d)  The amount or amounts and the other rights, if any, to which the holders of shares of such series shall be entitled upon the dissolution, liquidation or winding up of the affairs of the corporation or upon any other distribution of the assets of the corporation;

(e)  The sinking fund or purchase fund provisions, if any, for the redemption or purchase of shares of such series and, if any such fund is so provided for the benefit of such shares, the amount of such fund and the manner of its application;

(f)  The extent of the voting powers, if any, of the shares of such series;

(g)  Whether or not the shares of such series shall be convertible into, or exchangeable for, shares of any other class or classes of stock, or of any series thereof, of the corporation and, if so convertible or exchangeable, the conversion or exchange price or prices or rate or rates, the adjustments thereof and the other terms and conditions, if any, on which shares shall be so convertible or exchangeable; and

HIGHLY CONFIDENTIAL

CWY000392

(h)  Any other preferences and relative, parti-
cipating, optional or other special rights, and
qualifications, limitations or restrictions thereof,
of shares of such series as are not fixed and
determined in this Article III.

3.  The powers, preferences and rights, and the qualifi-
cations, limitations or restrictions thereof, applicable to the
preferred stock of all series are as follows:

(a)  Out of the funds of the corporation
legally available for dividends, the holders of
the preferred stock of each series shall be entitled
to receive, when and as declared by the Board of
Directors, cash dividends at such rate, if any and
no more, and payable at such times and for such
quarterly dividend periods as shall be fixed for
such series by the Board of Directors as herein
permitted.  Dividends on any shares of preferred
stock shall be cumulative only if and to the extent
fixed by resolution of the Board of Directors.
Accumulations of dividends, if any, shall not bear
interest.

No such dividend shall be paid or declared
and set apart for payment on any share of preferred
stock for any quarterly dividend period unless a
dividend for the same quarterly dividend period
and all past quarterly dividend periods, if any,
ending within such quarterly dividend period, ratably
in proportion to the respective annual dividend rates
fixed therefor, shall be or have been paid or declared

HIGHLY CONFIDENTIAL

CWY000393

and set apart for payment on all shares of preferred stock of all series then outstanding and entitled to receive dividends for such quarterly dividend period or for any past quarterly dividend period, if any, ending within such quarterly dividend period.

In no event, so long as any preferred stock shall remain outstanding, shall any dividend, other than a dividend payable in shares of common stock be declared or paid upon, nor shall any distribution be made upon, any common stock, nor shall any shares of common stock be purchased or redeemed by the corporation other than in exchange for common stock, nor shall any monies be paid or made available for a sinking fund for the purchase or redemption of any common stock, unless in each instance accrued and unpaid dividends on all outstanding shares of the preferred stock for all past dividend periods shall have been paid and the dividend on all outstanding shares of the preferred stock for the then applicable current quarterly dividend period shall have been paid, or declared and a sum sufficient for the payment thereof set apart.

(b) In the event of any liquidation, dissolution or winding up of the affairs of the corporation, the holders of preferred stock shall be entitled to receive, out of the assets of the corporation available for distribution to its stockholders,

HIGHLY CONFIDENTIAL     CWY000394

an amount in cash for each share equal to the amount payable on such share in such event provided for by the Board of Directors as permitted herein for the series of preferred stock of which such share is a part plus, in each case, an amount equal to all dividends accrued and unpaid on such share up to the date fixed for distribution, and no more, before any distribution shall be made to the holders of the common stock.

If upon any such liquidation, dissolution or winding up of the corporation its net assets shall be insufficient to permit the payment in full of the respective amounts to which the holders of all outstanding preferred stock of all series are entitled as above provided, the entire remaining net assets of the corporation shall be distributed among the holders of preferred stock of all series in amounts proportionate to the full amounts to which they are respectively so entitled, pursuant to the resolution of the Board of Directors fixing and determining the relative rights and preferences of the shares of each series.

Neither the merger nor consolidation of the corporation, nor the sale, lease or conveyance of all or a part of its assets, shall be deemed to be a voluntary or involuntary liquidation, dissolution or winding-up of the affairs of the corporation within the meaning of this subparagraph (b).

4.   (a)   Except for such voting powers as may be

HIGHLY CONFIDENTIAL

CWY000395

granted to the holders of preferred stock by law, subparagraph
(b) of this paragraph 4, or as may be granted to the holders
of any one or more series of preferred stock by the Board of
Directors in accordance with paragraph 2(f) of this Article III,
voting power shall be vested exclusively in the common stock.
At every meeting of the stockholders of the corporation every
holder of common stock entitled to vote shall be entitled to
one vote for each share of common stock registered in his name
on the books of the corporation and, except as otherwise provided,
herein, by law or pursuant to the resolution of the Board of
Directors fixing and determining the relative rights and prefer-
ences of the shares of each series, the common stock and the
preferred stock of the corporation (and any other capital stock
of the corporation at the time entitled thereto), shall vote
together as a class.

      (b)  At any time when six (6) quarterly dividends,
whether cumulative or non-cumulative, on any one or more series
of preferred stock entitled to receive dividends, whether cumu-
lative or non-cumulative, shall be in default, the holders of
all such cumulative series at the time or times outstanding
as to which such default shall exist shall be entitled, at the
next annual meeting of stockholders or special meeting held in
place thereof, at which time the number of directors constitut-
ing the Board of Directors shall be increased by two, voting as
a class, whether or not the holders thereof shall otherwise be
entitled to vote, to the exclusion of the holders of common
stock, to vote for and elect two members of the Board of
Directors of the corporation to fill such newly-created director-
ships.  All rights of all series of preferred stock to participate

HIGHLY CONFIDENTIAL CWY000396

in the election of directors pursuant to this subparagraph
4(b) shall continue in effect, in the case of all series of
preferred stock entitled to receive cumulative dividends,
until cumulative dividends have been paid in full or set apart
for payment on each cumulative series which shall have been
entitled to vote at the previous annual meeting of stockholders,
or special meeting held in place thereof, or, in the case of all
series of non-cumulative preferred stock, until non-cumulative
dividends have been paid in full or set apart for payment for
four consecutive quarterly dividend periods on each non-
cumulative series which shall have been entitled to vote at the
previous annual meeting of stockholders or special meeting held
in place thereof. Whenever the holders of the preferred stock
shall be divested of such voting right hereinabove provided,
the directors so elected by the preferred stock shall thereupon
cease to be directors of the corporation and thereupon the number
of directors shall be reduced by two. Directors elected by the
holders of any one or more series of stock voting separately
as a class, may be removed only by a majority vote of such series,
voting separately as a class, so long as the voting power of such
series shall continue. The holders of the common stock, voting
as a class, to the exclusion of the holders of such series so
entitled to vote for and elect members of the Board of Directors
pursuant to this subparagraph 4(b) shall be entitled to vote for
and elect the balance of the Board of Directors. No stockholder
entitled to vote at any particular time in accordance with the
foregoing provisions shall have more than one vote for each
share of stock held of record by him at the time entitled to
voting rights.

HIGHLY CONFIDENTIAL

CWY000397

(c)  Subject to all of the rights of the preferred stock or any series thereof, the holders of the common stock shall be entitled to receive, when and as declared by the Board of Directors, out of funds legally available for that purpose, dividends payable in cash, stock or otherwise.

(d)  In the event of any liquidation, dissolution or winding up of the affairs of the corporation, ' the holders of all series of the preferred stock shall have received all the amounts to which they shall be entitled in such event in accordance with the provisions of this Article III and any further provisions prescribed in accordance herewith, the holders of the common stock shall be entitled, to the exclusion of the holders of the preferred stock of all series, to share in all the remaining assets of the corporation available for distribution to the stockholders.

HIGHLY CONFIDENTIAL

CWY000398

FILED

'83 NOV -5 ΡΜ 11 16

TALLAH̲....

ARTICLES OF AMENDMENT

TO

RESTATED ARTICLES OF INCORPORATION

OF

CORDIS CORPORATION

Pursuant to the terms, provisions and mandates of the Florida Statutes, Section 607.001 et seq., the Florida General Corporation Act, Cordis Corporation, a Florida corporation, by its undersigned officers, states the following:

1.   The name of the corporation is CORDIS CORPORATION.

2.   That the Restated Articles of Incorporation of Cordis Corporation, heretofore filed with the Florida Department of State, with respect to Article III thereof, the said Article III being titled "Capital Stock," have been amended as follows:

> That the maximum shares of common stock that the Corporation is authorized to issue and have outstanding is Fifty Million (50,000,000) Shares at par value of $1.00 per share.

3.   That the increase in authorized common stock of the Corporation as herein set forth is the only amendment to the Restated Articles of Incorporation and no other or further provision thereof is intended to be changed by these Articles of Incorporation.

4.   That the aforesaid Amendment was duly adopted by the affirmative vote of the holders of a majority of the shares of the Corporation's Common Stock entitled to vote thereon at the Annual Meeting of the Corporation, on October 21, 1983, subsequent to notice of the meeting, duly given to each Shareholder of record entitled to vote at such meeting and at which meeting there was a quorum of the Shareholders entitled to vote present, in person or by proxy.

IN WITNESS WHEREOF, the undersigned, on behalf of CORDIS CORPORATION, have executed these Articles of Amendment this 24th day of October, 1983.

HAROLD HERSHENSON
Executive Vice President

DANIEL G. HALL
Secretary

HIGHLY CONFIDENTIAL

CWY000399

STATE OF FLORIDA)
                ) ss
COUNTY OF DADE  )

ON THIS DAY, personally appeared before me, the undersigned officer, a Notary Public, in and for the State and County aforesaid, HAROLD HERSHENSON, known to me to be the Executive Vice President of Cordis Corporation, a Florida corporation, and after making oath in due form of law, acknowledged that he executed the foregoing Articles of Amendment as such Officer of the Corporation, for and on behalf of the said Corporation, after having been duly authorized to do so.

WITNESS my hand and official seal this 24th day of October, 1983, at Miami, Dade County, Florida.

                                   Aaron E. DeBell
                              NOTARY PUBLIC
                              NOTARY PUBLIC STATE OF FLORIDA
                              MY COMMISSION EXPIRES APR 18 1986
                              BONDED THRU GENERAL INS. UND

HIGHLY CONFIDENTIAL                    CWY000400

FILED

96 FEB 23 AM 10 51

SECRETARY OF STATE
TALLAHASSEE, FLORIDA

ARTICLES OF MERGER
OF
JNJ MERGER CORP., A FLORIDA
CORPORATION,
INTO
CORDIS CORPORATION, A FLORIDA CORPORATION

Pursuant to the provisions of Sections 607.1101 and 607.1105 of the Florida Business Corporation Act (the "FBCA"), JNJ Merger Corp., a Florida corporation (the "Merger Subsidiary"), and Cordis Corporation, a Florida corporation ("Cordis"), adopt the following Articles of Merger for the purpose of merging the Merger Subsidiary with and into Cordis (the "Merger").

FIRST:  The Agreement and Plan of Merger and a list of the directors who will comprise the board of directors of Cordis upon the effectiveness of the Merger (collectively, the "Plan of Merger") are attached hereto as Exhibit A and Exhibit B, respectively.

SECOND.  The effective date of the Merger shall be February 23, 1996.

THIRD:  The Plan of Merger was adopted by the board of directors of the Merger Subsidiary by a unanimous written consent in accordance with the provisions of Sections 607.0821 and 607.1103 of the FBCA as of November 10, 1995; The Plan of Merger was adopted by the sole shareholder of the Merger Subsidiary by a unanimous written consent in accordance with the provisions of Sections 607.0704 and 607.1103 of the FBCA as of February 20, 1996.

FOURTH:  The Plan of Merger was adopted by the board of directors of Cordis at a special meeting of the board of directors held on November 12, 1995 in accordance with the provisions of Sections 607.0820 and 607.1103 of the FBCA; The Plan of Merger was adopted by the shareholders of Cordis at a special meeting of the shareholders held on February 23, 1996 in accordance with the provisions of Sections 607.0702 and 607.1103 of the FBCA.

HIGHLY CONFIDENTIAL

CWY000401

IN WITNESS WHEREOF, these Articles of Merger have been executed and delivered on behalf of the parties hereto as of February 23, 1996.

JNJ MERGER CORP.

By: _____
      J.S. Orban, President

CORDIS CORPORATION

By: _____
      bert Strauss, President

HIGHLY CONFIDENTIAL

CWY000402

IN WITNESS WHEREOF, these Articles of Merger have been executed and delivered on behalf of the parties hereto as of February 23, 1996.

JNJ MERGER CORP.

By: _____
J.S. Orban, President

CORDIS CORPORATION

By: _____
Robert Strauss, President

HIGHLY CONFIDENTIAL

CWY000403

*STATE OF DELAWARE*
*SECRETARY OF STATE*
*DIVISION OF CORPORATIONS*
*FILED 10:00 AM 01/24/2003*
*030052035 − 2762286*

## CERTIFICATE OF OWNERSHIP AND MERGER

### MERGING

### AngioGuard, Inc.

### INTO

### Cordis Corporation

* * * * * * *

Cordis Corporation, a corporation organized and existing under the laws of Florida,

DOES HEREBY CERTIFY:

FIRST: That this corporation was incorporated on the 7th day of May, 1959, pursuant to Chapters 607 and 621 of the Statutes of the State of Florida, the provisions of which permit the merger of a subsidiary corporation of another state into a parent corporation organized and existing under the laws of said state.

SECOND: That this corporation owns all of the outstanding shares of the stock of AngioGuard, Inc., a corporation incorporated on the 13th day of June, 1997, pursuant to Section 104 of Delaware General Corporation Law of the State of Delaware.

THIRD: That this corporation, by the following resolutions of its Board of Directors, duly adopted by the unanimous written consent of its members, filed with the minutes of the Board on the 9th day of December, 2002, determined to and did merge into itself said AngioGuard, Inc.:

RESOLVED, that Cordis Corporation merge, and it hereby does merge into itself AngioGuard, Inc. and assumes all of its obligations; and

FURTHER RESOLVED, that the merger shall be effective upon the date this Certificate of Ownership and Merger is filed with the Secretary of State of Delaware and the Articles of Merger are filed with the Secretary of State of Florida; and

FURTHER RESOLVED, that the proper officer of this corporation be and he or she is hereby directed to make and execute a Certificate of Ownership and Merger setting forth a copy of the resolutions to merge said AngioGuard, Inc. and assume its liabilities and obligations, and the date of adoption thereof, and to cause the same to be filed with the

HIGHLY CONFIDENTIAL

CWY000404

Secretary of State and to do all acts and things whatsoever, whether within or without the State of Delaware, which may be in anywise necessary or proper to effect said merger; and

FOURTH: Cordis Corporation hereby merges into itself AngioGuard, Inc. and said AngioGuard, Inc. shall be and hereby is merged into Cordis Corporation, which shall be the surviving corporation.

FIFTH: The Articles of Incorporation of Cordis Corporation, as heretofore amended and as in effect on the date of the merger provided for in this Agreement, shall continue in full force and effect as the Articles of Incorporation of the corporation surviving this merger.

SIXTH: The executed agreement and plan of merger is on file at Johnson & Johnson, the parent Company of Cordis Corporation, One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

SEVENTH: That this corporation survives the merger and may be served with process in the State of Delaware in any proceeding for enforcement of any obligation of AngioGuard, Inc. as well as for enforcement of any obligation of the surviving corporation arising from the merger, including any suit or other proceeding to enforce the right of any stockholder as determined in appraisal proceedings pursuant to the provisions of Section 262 of the General Corporation Law of the State of Delaware, and it does hereby irrevocably appoint the Secretary of State of Delaware as its agent to accept service of process in any such suit or other proceeding. The address to which a copy of such process shall be mailed by the Secretary of State of Delaware is Johnson & Johnson, One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933, Attn: Litigation Department, until the surviving corporation shall have hereafter designated in writing to the said Secretary of State a different address for such purpose. Service of such process may be made by personally delivering to and leaving with the Secretary of State of Delaware duplicate copies of such process, one of which copies the Secretary of State of Delaware shall forthwith send by registered mail to Johnson & Johnson, One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933, Attn: Litigation Department.

IN WITNESS WHEREOF, said Cordis Corporation has caused this Certificate to be signed by Eric Roth, its Vice President, this 9th day of December, 2002.

Cordis Corporation

By _____
Eric Roth, Vice President

HIGHLY CONFIDENTIAL _____

## ARTICLES OF MERGER

THESE ARTICLES OF MERGER, dated this 16th day of April, 2003, are submitted in accordance with the Florida Business Corporation Act, pursuant to Section 607.1105, F.S.

FIRST:    Cordis Corporation, a Florida corporation, is the surviving corporation.

SECOND:    NDC Purchaseco, Inc., a Florida corporation, is the merging corporation.

THIRD:    The Plan of Merger is attached.

FOURTH:    The merger shall become effective on the date the Articles of Merger are filed with the Florida Department of State.

FIFTH:    The Plan of Merger was adopted by the board of directors of Cordis Corporation on April 15, 2003 and shareholder approval was not required.

SIXTH:    The Plan of Merger was adopted by the board of directors of NDC Purchaseco, Inc. on April 15, 2003 and shareholder approval was not required.

IN WITNESS WHEREOF, the undersigned have executed this document this 16th day of April, 2003.

CORDIS CORPORATION

P. Roth, Vice President

NDC PURCHASECO, INC.

M. H. Ullmann, Vice President

HIGHLY CONFIDENTIAL

CWY000406

## PLAN OF MERGER

The following plan of merger is submitted in compliance with section 607.1104, F. S. and in accordance with the laws of any other applicable jurisdiction of incorporation.

**FIRST:**    NDC Purchaseco, Inc., a Florida corporation (the "Subsidiary Corporation"), shall merge with and into Cordis Corporation, a Florida corporation (the parent "Surviving Corporation"), and the separate existence of the Subsidiary Corporation shall cease.

**SECOND:**    The Articles of Incorporation and the By-laws of the Surviving Corporation in effect at the effective time of the merger, shall continue to be and remain the Articles of Incorporation and the By-laws of the Surviving Corporation.

**THIRD:**    The directors and officers of the Surviving Corporation in office on the effective date of the merger shall be and remain the directors and officers of the Surviving Corporation until their successors are duly elected and appointed, all in accordance with law.

**FOURTH:**    All of the issued shares of the Subsidiary Corporation are owned at the effective time of the merger by the Surviving Corporation. At the effective time of the merger, all of the issued and outstanding shares of the Subsidiary Corporation shall be canceled without consideration and no shares of the Surviving Corporation shall be issued in exchange therefore.

**FIFTH:**    This merger shall become effective upon the filing of the Articles of Merger with the Secretary of State of Florida.

IN WITNESS WHEREOF, each party to this Plan, pursuant to the approval and authority given by resolution adopted by their respective Board of Directors, has caused this Agreement to be executed by its proper officer as the respective act, deed and agreement of such party on this 16th day of April 2003.

HIGHLY CONFIDENTIAL

**CWY000407**

CORDIS CORPORATION

Name:  E. Roth
Title:   Vice President


NDC PURCHASECO, INC.

Name:  M. H. Ullmann
Title:   Vice President

HIGHLY CONFIDENTIAL

CWY000408

# Exhibits 33 – 44
# Fully Redacted

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on February 20, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Richard L. Renck
> Ashby & Geddes
> rrenck@ashby-geddes.com

I also certify that copies were caused to be served on February 20, 2007 upon the following in the manner indicated:

| **BY HAND** | **BY EMAIL** |
|---|---|
| Lawrence C. Ashby | Gregory L. Diskant |
| Steven J. Balick | *gldiskant@pbwt.com* |
| Richard L. Renck | Michael J. Timmons |
| ASHBY & GEDDES | *mjtimmons@pbwt.com* |
| 222 Delaware Ave. | Irena Royzman |
| P.O. Box 1150 | *iroyzman@pbwt.com* |
| Wilmington, DE  19899 | Patrick S. Almonrode |
| | *palmonrode@pbwt.com* |
| | Rosa E. Son |
| | *reson@pbwt.com* |
| | PATTERSON, BELKNAP, WEBB & TYLER LLP |
| | 1133 Avenue of the Americas |
| | New York, NY  10036 |

*/s/ Richard J. Bauer (#4828)*
Richard J. Bauer (#4828)